IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

TONYA M. TREAT,                        )
                                       )
                   Plaintiff,          )
                                       )
vs.                                    )        Case Number CIV-05-1330-C
                                       )
CONOCO PHILLIPS COMPANY; and           )
GARY HORTON, an individual,            )
                                       )
                   Defendants.         )

## MEMORANDUM OPINION

Plaintiff filed the present action alleging Defendants violated the terms of the Family and Medical Leave Act, 29 U.S.C. §§ 2611, *et seq.* ("FMLA"); the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"); the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"); the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"); the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"); and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), during the course of her employment and termination.  Plaintiff also brings state law-based claims alleging violation of the Oklahoma Anti-Discrimination Act, 25 Okla. Stat. §§ 1101, and a claim for Intentional Infliction of Emotional Distress ("IIED").  Defendants filed the present motion asserting the undisputed material facts entitle them to judgment on Plaintiff's claims.

## I.  BACKGROUND

The following facts are either undisputed or presented in the light most favorable to Plaintiff:

Plaintiff was employed in the Conostan Division of Defendant ConocoPhillips (Conoco) as a Customer Service Associate.  Defendant Horton was Plaintiff's supervisor. During the course of her employment, Plaintiff began suffering from depression.  After contacting Conoco's Employee Assistance Program ("EAP"), Plaintiff was placed on medical leave. Plaintiff's leave was covered by the FMLA.  Prior to Plaintiff's FMLA leave, Plaintiff and Horton had a meeting where the two discussed the amount of work assigned to Plaintiff and the lack of support from her co-workers.  Horton and Plaintiff began having daily meetings to discuss issues related to Plaintiff's job.  On March 31, 2004, Horton informed Plaintiff that if her work did not start getting completed, the outcome would not be good.  On April 1, 2004, Plaintiff sent an e-mail to Horton's supervisor and also contacted Conoco's EAP.  Plaintiff then began her FMLA leave.

Plaintiff was released by her doctor to return to work on December 6, 2004.  Prior to Plaintiff's return, she met with Horton and Sally Scott, the Conoco Human Resources representative for Conostan.  At that meeting, Horton and Scott provided a letter which outlined the changes in Plaintiff's job since her absence and set out the expectations for Plaintiff's performance upon her return.  In January of 2005, about a month after her return to work, Plaintiff received a Letter of Direction and Final Warning which purported to outline four areas in which her work performance was unsatisfactory. Plaintiff's employment

with Conostan was terminated on February 18, 2005. Defendants contend Plaintiff's termination was a result of the elimination of her position due to restructuring within the Conostan division. Plaintiff claims the termination was discriminatory.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any

point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998).

### III.  DISCUSSION

A.  FMLA Claims.

    1.  Interference

In her Complaint, Plaintiff claimed that Defendants' actions interfered with her rights under the FMLA and that her termination was in retaliation for exercising those rights. Defendants argue there is no evidence they interfered with Plaintiff's FMLA rights and Plaintiff concedes this point in her Response.  Accordingly, judgment will issue in favor of Defendants on the interference claim.

    2.  Retaliation

Plaintiff also raises an FMLA retaliation claim.  To establish such a claim, Plaintiff must show "(1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between the two actions." Morgan v. Hilti, Inc., 108 F.3d 1319, 1325 (10th Cir. 1997).  Defendants do not dispute that Plaintiff has established the first two elements, but argue Plaintiff cannot show a causal connection.  Plaintiff argues that she has established causation, noting the letter she received while still on leave, the fact that she received the Final Warning barely one month after her return, and that she was terminated barely two months after her return. Plaintiff also points to Horton's acts of changing her voice mail during her absence to reflect that she was not returning and his antagonism towards her upon her return.

4

At this stage, the Court must examine the facts in the light most favorable to Plaintiff. Under that standard, Plaintiff has demonstrated a question of material fact. First, as Plaintiff notes, the Tenth Circuit has held that timing alone can demonstrate causation.

> The date of Plaintiff's termination is key to this inquiry because the closer it occurred to the protected activity, the more likely it will support a showing of causation. Compare Ramirez v. Oklahoma Dept. of Mental Health, 41 F.3d 584, 596 (10th Cir. 1994) (one and one-half month period between protected activity and adverse action may, by itself, establish causation) with Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (three-month period, standing alone, is insufficient to establish causation).

Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999). Further, a reasonable jury could find that the communications between Horton and Scott regarding their concerns about Plaintiff's termination appearing discriminatory cast doubt on the validity of the concerns about Plaintiff's performance.

Defendants argue that even if the Court finds Plaintiff has established a prima facie case, because a non-discriminatory reason for Plaintiff's termination was proffered the burden again shifts to Plaintiff to show that reason was pretext. Defendants argue that Plaintiff cannot meet that burden as the undisputed evidence shows that Plaintiff's termination was the result of restructuring the division and the creation of a new position. However, as Plaintiff notes, Horton has offered differing reasons for Plaintiff's termination. In his deposition, Horton testified Plaintiff was selected for termination during the restructuring because of her poor performance. When viewed in the light most favorable to Plainitff, questions of material fact remain regarding whether or not Plaintiff's performance was in fact substandard and whether or not Horton treated her differently than her co-workers

5

after her return from FMLA leave.   Once Plaintiff casts doubt on Defendants' non-discriminatory reason, the presumption arising from proof of the prima facie case is sufficient.  See Ingels v. Thiokol Corp., 42 F.3d 616, 621-622 (10th Cir. 1994) (abrogated on other grounds) ("[A] factfinder may, but is not required to, find discrimination when a plaintiff presents evidence that the defendant's proffered reasons are unworthy of credence.").  Thus, Defendants' motion will be denied on this issue.

B.  ADA Claim

    Conoco[1] argues that Plaintiff cannot establish a prima facie case of ADA discrimination because, as  she was released to return to work with no restrictions, she cannot establish she is a person with a disability.  In response, Plaintiff argues that Conoco does not dispute that she was once disabled, just that she is no longer.  Plaintiff argues that her disability interfered with her major life functions of sleeping, eating, concentrating, interacting with others, and caring for herself.  However, Plaintiff has offered no evidence from which a reasonable jury could find she continued to suffer from these limitations after her return to work.   Although Plaintiff testified she continued to see her doctors and continued to take anti-depressants, she has offered no evidence her illness continued to substantially affect a major life activity at the time Conoco terminated her employment.  See Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002):

> It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment.

[1] Plaintiff does not suggest that Horton is a proper Defendant under the ADA.

Instead, the ADA requires those "claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial."

(quoting Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 567 (1999)).   Nevertheless, Plaintiff's claim will survive.   Under Plaintiff's evidence a reasonable jury could find that Conoco began taking steps to terminate her while she was on leave and disabled.   If the jury so found, it could also find that Plaintiff's termination was, at least in part, because she was disabled.   Accordingly, Conoco's motion will be denied on this issue.

C.  FLSA Claims

    1. Unpaid Overtime

        Plaintiff argues that Defendants refused to pay her overtime for hours she worked. Plaintiff argues that she reported the overtime to Horton in 2000/2001 and he told her it would benefit her career.   Plaintiff argues that co-workers told her Horton would not authorize overtime and therefore she felt compelled to continue to do the work without submitting the hours for payment.   Defendants argue that once they learned of Plaintiff's complaint, in 2004, they investigated the claim and found it unsupported.   Defendants note that regardless of that investigation, Plaintiff is estopped from pursuing her claim as she did not record the time in her time sheets.

        As Plaintiff notes, Defendants' authority is inapposite, as in that case it was undisputed that the employer had no knowledge the employee was working overtime.   See Forrester v. Roth's I. G. A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981):

7

In the present case, the officials of Roth's stated in their affidavits that they had no knowledge that Forrester had been working uncompensated overtime hours. Forrester himself testified in his deposition that he "did not mention any unpaid overtime work to any store official prior to filing his complaint." Forrester did not raise a genuine issue of material fact concerning whether any official of Roth's should have known about his alleged uncompensated hours.

(internal citation omitted). Here, Plaintiff has testified that she told Horton of the overtime;[2] therefore, Defendants are in a different position than the employer in <u>Forrester</u>. While Plaintiff's deposition testimony is unsupported by any independent evidence, and is directly contrary to the sworn testimony of the employees she allegedly spoke with, the Court cannot make credibility determinations at this stage, and Defendants' motion will be denied on this claim.

2. Retaliation

Plaintiff argues that she was terminated, at least in part, due to her complaints about unpaid overtime. Defendants argue that Plaintiff's FLSA retaliation claim is subject to the same burden-shifting analysis which applied to her FMLA claim. According to Defendants, Plaintiff's FLSA retaliation claim must fail because there is no evidence of a causal connection between her complaints of unpaid overtime and her termination. Plaintiff argues that the very facts that prevented summary judgment on the FMLA claim are operative to prevent summary judgment on the present claim.

---

[2] Plaintiff's reliance on reporting to Scott, Gingerich, and Countryman is of no assistance as those reports did not occur until after her medical leave began and there is no evidence she worked overtime after her return.

Nothing in the evidence relied on by Plaintiff to show a causal connection even remotely suggests her unpaid overtime claims were considered in connection with her termination.   While there was some evidence from which a reasonable jury could find Plaintiff's FMLA absence played a role in her termination, there is not a single shred of evidence, other than the conjecture of counsel, supporting the proposition that Plaintiff's FLSA claim had anything to do with her termination.   Thus, Plaintiff has failed to satisfy her obligation in responding to Defendants' summary judgment motion.   See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988):

> To avoid summary judgment, a party must produce "*specific* facts showing that there remains a genuine issue for trial" and evidence "'significantly probative' as to any [material] fact claimed to be disputed."   Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983) (quoting Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979), cert. denied, 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980)).   Thus, plaintiffs' mere conjecture that their employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.

Accordingly, judgment will be entered in favor of Defendants on this issue.

D.  Equal Pay Claim[3]

Plaintiff argues that Mr. Johnston, the employee hired when she was terminated, was paid a higher salary and is a male and therefore Defendants have violated the Equal Pay Act.

---

[3]  The parties lump Plaintiff's Title VII claim and her EPA claim into the same argument. However, the Circuit has noted the claims are distinct and have differing standards of proof.   See Mickelson v. New York Life Ins. Co., 460 F.3d 1304, 1310 (10th Cir. 2006).   Based on the arguments in her brief, it is clear that Plaintiff is raising only an EPA claim.

Defendants argue that Johnston is performing different job duties than Plaintiff and therefore there is no violation of the EPA.

The Tenth Circuit has set out the elements of a prima facie case for an EPA claim. Plaintiff has the burden of proving that:  "(1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; (3) the male employees were paid more under such circumstances." Tidwell v. Fort Howard Corp., 989 F.2d 406, 409 (10th Cir. 1993).  Here, there is little dispute that Plaintiff has satisfied the second and third elements.  Rather, the parties are in disagreement over whether the work performed by Mr. Johnston was "substantially equal" to that performed by Plaintiff.  The Circuit has noted that "equal work" is not to be interpreted broadly.  See Nulf v. Int'l Paper Co., 656 F.2d 553, 560 (10th Cir. 1981). Rather, the jobs must be substantially equal in terms of skill, effort, responsibility, and working conditions.  Id.  The Circuit has upheld a grant of summary judgment where the plaintiff established that she performed some but not all of the duties in a newly-created post.  See Miller v. Auto. Club of N.M., Inc., 420 F.3d 1098, 1119 (10th Cir. 2005) (abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, ___ U.S. ___, 126 S.Ct. 2405 (2006)).  Here, Plaintiff has failed to show her job duties were substantially similar to those of the newly-created post.  It is undisputed that as part of his job responsibilities, Mr. Johnston was the first place to stop when customer service employees or technicians had questions or problems related to customer service issues.  Plaintiff never had these

responsibilities.  Plaintiff tries to minimize this distinction by arguing Mr. Johnston's role was only as an informal team lead as he did not make personnel decisions.  However, that distinction ignores the fact that Mr. Johnston did in fact have job responsibilities in addition to those Plaintiff performed.  Indeed, Plaintiff has offered no evidence demonstrating that the Customer Service Team Lead, Mr. Johnston's position, performed work equal to that she performed.  Accordingly, Plaintiff has failed to make a prima facie case and Defendants are entitled to judgment on her EPA claim.

E.  ADEA Claim

Plaintiff argues that her termination was due to her age.  Plaintiff argues she has made a prima facie case of age discrimination as she has demonstrated she was over the age of 40, she was performing satisfactorily and was qualified for her position, she was terminated and was replaced by a significantly younger person.  Conoco[4] argues that Plaintiff cannot prove her prima facie case as the undisputed evidence demonstrates that she was not performing satisfactorily.  Conoco further argues that even assuming a prima facie case is made, Plaintiff cannot show that its reasons for terminating her were pretextual.  Finally, Conoco argues that because three of the four persons involved in the decision to terminate her were over 40, Plaintiff cannot show that her age was the reason behind her termination.

As noted above in the discussion of Plaintiff's FMLA claim, the differing positions taken by Conoco regarding its decision to terminate Plaintiff require a credibility

---

[4] Plaintiff concedes that Horton cannot be liable for her ADEA claim.

determination.  Because the Court is prohibited from making such a determination at this stage, it cannot be said that Plaintiff has failed to establish a prima facie case and rebut Conoco's proffered non-discriminatory reason for her termination.  Conoco has offered no authority supporting its proposition that the age of the decisionmaker is sufficient to preclude a finding of age discrimination and the Court is aware of none.  Accordingly, Conoco's motion will be denied on this issue.

F.  Intentional Infliction of Emotional Distress Claim

Plaintiff argues that the actions of Horton and others employed by Conoco are actionable as they constitute intentional infliction of emotional distress.  In particular, Plaintiff points to Horton's actions of prying into her medical condition, the medications she was taking, and who her doctors were.  Plaintiff also notes Horton's comments that she was paranoid and emotional and that he did not want her to return to work.  Finally, Plaintiff asserts that the actions taken leading to her termination, papering her file with "disciplinary" issues, and developing a scheme to get rid of her, were extreme and outrageous.

To establish a *prima facie* case for IIED Plaintiff must show:  "(1) that the tortfeasor acted intentionally or recklessly; (2) that the tortfeasor's conduct was extreme and outrageous; (3) that plaintiff actually experienced emotional distress; and (4) that the emotional distress was severe."  Daemi v. Church's Fried Chicken, Inc., 931 F.2d 1379, 1387 (10th Cir. 1991) (applying Oklahoma law).  In considering IIED claims, the Court acts as a gatekeeper, making an initial determination about the validity of Plaintiff's claims before sending them to the jury.

12

> The court, in the first instance, must determine whether the defendant's conduct may reasonably be regarded so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where, under the facts before the court, reasonable persons may differ, it is for the jury, subject to the control of the court, to determine whether the conduct in any given case has been significantly extreme and outrageous to result in liability. Likewise, it is for the court to determine, in the first instance, whether based upon the evidence presented, severe emotional distress can be found. It is for the jury to determine whether, on the evidence, severe emotional distress in fact existed.

Breeden v. League Servs. Corp., 1978 OK 27, ¶ 12, 575 P.2d 1374, 1377-78 (footnote omitted). Here, when viewed in the light most favorable to Plaintiff, the facts fail to demonstrate conduct sufficiently outrageous to satisfy either element of the Court's gatekeeper analysis. When viewed in the light most favorable to Plaintiff, Defendants' conduct may have been callous; however, it does not rise to the level of extreme and outrageous. The acts of which Plaintiff complains are not so far removed from the bounds of decency that they are actionable in tort. Moreover, though Plaintiff has offered some evidence of emotional distress, that distress does not rise to the severity required by Oklahoma law. In Zeran v. Diamond Broad. Inc., 203 F.3d 714 (10th Cir. 2000), the Tenth Circuit upheld the district court's finding of no IIED claim where the plaintiff had suffered anxiety attacks, received threatening and abusive telephone calls, sought medical care, and began taking a prescription drug for his anxiety. Id. at 721. Courts have repeatedly held that the suffering must be extreme or utterly intolerable in a civilized society. See Eddy v. Brown, 1986 OK 3, ¶ 7, 715 P.2d 74, 77.

> [I]n order to prevent the tort of outrage from becoming a panacea for all of life's ills, recovery must be limited to distress that is severe. In other words,

13

the distress must be of such a character that no reasonable person could be expected to endure it.  Such distress is often accompanied by shock, illness, or other bodily harm, but bodily harm is not a prerequisite for demonstrating severe emotional distress.

Daemi, 931 F.2d at 1389 (internal citations and quotations omitted).  Here, the distress allegedly suffered by Plaintiff fails to meet the severity required to support her IIED claims.  Accordingly, Defendants are entitled to judgment on this claim.

## IV.  CONCLUSION

As set forth more fully herein, Defendants' Motion for Summary Judgment (Dkt. No. 50) is GRANTED in part and DENIED in part.  Defendants are granted judgment on Plaintiff's FMLA interference, FLSA retaliation, EPA, and IIED claims.  Plaintiff's remaining claims survive for trial.  A separate judgment will issue at the close of the remaining proceedings in this matter.

IT IS SO ORDERED this 8th day of February, 2007.


ROBIN J. CAUTHRON
United States District Judge